UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SERVICE EMPLOYEES
INTERNATIONAL UNION, UNITED
HEALTHCARE WORKERS - WEST,
on behalf of represented
employees,

           NO. CIV. S-08-2980 LKK/CMK

    Plaintiffs,

  v.

PRIME HEALTHCARE SERVICES,
INC.; PRIME HEALTHCARE
SERVICES - SHASTA, LLC;
SHASTA REGIONAL MEDICAL
CENTER, INC.; SHASTA            O R D E R
REGIONAL MEDICAL CENTER, LLC;
MEDICAL PROPERTIES TRUST; MPT
OF SHASTA, LP; MPT OF SHASTA,
LLC; MPT OPERATING PARTNERSHIP,
LP; and DOES 1 through 25,

    Defendants.
_____/

    This case concerns the transition of a hospital workforce from an employer facing some financial struggles and with a unionized workforce to an employer who reduced the number of employees at the hospital and had a non-unionized workforce. Plaintiff, the Service

1

1  Employees International Union, United Healthcare Workers - West
2  ("SEIU UHW"), brings claims against numerous defendants for failure
3  to comply with the federal and California Worker Adjustment
4  Relocation and Notification Acts ("WARN Acts"). All defendants move
5  for summary judgment on both claims. For the reasons described
6  below, the court grants defendants' motions on plaintiff's federal
7  WARN Act claim and declines supplemental jurisdiction over
8  plaintiff's California WARN Act claim.

## I. BACKGROUND

At issue here is a change in management at Shasta Regional Medical Center ("hospital"). Plaintiff SEIU UHW brings claims against numerous defendants for failing to notify hospital employees about the change in management of the hospital. For reference, the court will list the moving defendants below:

    (1) Medical Properties Trust, Inc., MPT of Shasta L.P, MPT of Shasta, LLC, and MPT Operating Partnership, L.P., (together "MPT defendants" or "MPT").

    (2) Prime Health Care Services, Inc. and Prime Healthcare Services - Shasta, LLC ("Prime - Shasta"), (together "Prime defendants" or "Prime").

Prior to November 1, 2008, the hospital was managed by Shasta Regional Medical Center, LLC ("SRMC LLC"). SRMC LLC leased the hospital from MPT pursuant to a management contract.[1] The service and maintenance workers at SRMC LLC were part of the SEIU

---

[1] MPT is constituted by numerous entities. There is some dispute as to whether plaintiff sued the correct MPT entities.

2

UFW.

SRMC LLC suffered financial difficulties during the third quarter of 2008. It could not pay its rent to MPT during this time period. GE Capital was lending SRMC LLC money to cover its operating expenses. In September 2008, GE Capital stopped lending money to SRMC LLC. Defendants contend that SRMC LLC was in serious crisis. Plaintiff argues that the crisis was exaggerated.

MPT, apparently concerned with the financial viability of SRMC LLC and the hospital, approached Prime to see if they would be interested in operating the hospital. After making several significant concessions, Prime agreed to run the hospital. MPT was also involved in monitoring the financial condition of the hospital as it had invested significant funds in SRMC LLC.

Pursuant to these arrangements, MPT entered a lease agreement with Prime which took effect on November 1, 2008. MPT terminated its management agreement with SRMC LLC effective October 23, 2008 because SRMC LLC was in default. Prior to its management of the hospital, Prime employees investigated the hospital and prepared legal arrangements to manage the hospital effective November 1, 2008.

On October 31, 2008 all approximately 768 employees were terminated by SRMC LLC. Approximately 605 were given offers from Prime effective November 1, 2008. The offers with Prime did not include union membership.

**II. STANDARD FOR A FED. R. CIV. P. 56 MOTION FOR SUMMARY JUDGMENT**

Summary judgment is appropriate when there exists no genuine

1 issue as to any material fact. Such circumstances entitle the
2 moving party to judgment as a matter of law. Fed. R. Civ. P.
3 56(c); see also Adickes v. S.H. Kress & Co., 398 U.S. 144, 157
4 (1970); Secor Ltd. v. Cetus Corp., 51 F.3d 848, 853 (9th Cir.
5 1995). Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish the existence of a genuine issue of material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-86 (1986); see also First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968); Secor Ltd., 51 F.3d at 853. In doing so, the opposing party may not rely upon the denials of its pleadings, but must tender evidence of specific facts in the form of affidavits and/or other admissible materials in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e); see also First Nat'l Bank, 391 U.S. at 289. In evaluating the evidence, the court draws all reasonable inferences from the facts before it in favor of the opposing party. Matsushita, 475 U.S. at 587-88 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam)); County of Tuolumme v. Sonora Cmty.

4

1  Hosp., 236 F.3d 1148, 1154 (9th Cir. 2001). Nevertheless, it is
2  the opposing party's obligation to produce a factual predicate as
3  a basis for such inferences. See Richards v. Nielsen Freight
4  Lines, 810 F.2d 898, 902 (9th Cir. 1987). The opposing party
5  "must do more than simply show that there is some metaphysical
6  doubt as to the material facts . . . . Where the record taken as
7  a whole could not lead a rational trier of fact to find for the
8  nonmoving party, there is no 'genuine issue for trial.'"
9  Matsushita, 475 U.S. at 586-87 (citations omitted).

## III. ANALYSIS

Plaintiffs brings two claims against all defendants: (1) violation of the federal Worker Adjustment and Retraining Notification ("WARN") Act and (2) violation of the California WARN Act. Defendants have moved for summary judgment on both claims. For the reasons described below, the court grants defendants' motions for summary judgment as to the federal claim, and declines to exercise supplemental jurisdiction over the state claim.

### A.  Federal WARN Act

All defendants move for summary judgment on plaintiff's federal WARN Act claims. They argue that they were not required to comply with the Act because no actionable employment loss occurred. Specifically, they have presented evidence that an insufficient number of employees were terminated to create liability under the Act.

The federal WARN Act requires employers to provide employees

5

with sixty (60) days advance warning before a plant closing or mass layoff. A plant closing is defined as, "the permanent or temporary shutdown of a single site of employment, or one or more facilities or operating units within a single site of employment, if the shutdown results in an employment loss at the single site of employment during any 30-day period for 50 or more employees excluding any part-time employees." 29 U.S.C. § 2101(a)(2). The statute defines a mass layoff as a reduction in the workforce that "results in an employment loss at the single site of employment during any 30-day period for . . . at least 33 percent of the employees (excluding any part-time employees) . . . and at least 50 employees (excluding any part-time employees); or . . . at least 500 employees (excluding any part-time employees)." 29 U.S.C. § 2101(a)(3). Here, plaintiff contends a mass layoff has occurred. Accordingly, to survive summary judgment, plaintiff must demonstrate either that 33 percent of the full-time employees of the hospital suffered an employment loss, as defined by the statute and the total number of employees who suffered such a loss was at least 50 or that 500 full-time employees suffered an employment loss, as defined by the statute. For the reasons described below, plaintiff cannot meet either standard.

    **1.    Whether Plaintiff Has Presented Evidence that a Sufficient Number of Hospital Employees Were Not Offered Positions with Prime**

Defendants have presented evidence that SRMC LLC employed approximately 768 employees of which approximately 609 received

6

job offers from Prime. Accordingly, defendants argue that only approximately 159 employees suffered an employment loss, as defined by the statute. These employees constitute about 21% of the workforce. Thus, defendants argue that an insufficient percentage of employees were terminated to require notice under the federal WARN Act.

In response, plaintiff challenges defendants' evidence in support of the number of employees who were employed by SRMC LLC and the number of employees who were rehired by Prime. Defendants have offered a declaration from Cynthia Gordon, the chief nursing officer of the hospital under Prime and former vice president of operations and chief nursing officer of SRMC LLC, and Sandra Speer, director of human resources of the hospital under Prime and former vice president of human resources under SRMC LLC. Both individuals have testified under penalty of perjury to the numbers listed above. Plaintiff has moved to strike Gordon's declaration because during her Fed. R. Civ. P. 30(b)(1) deposition she could not identify with certainty whether a list of 609 employees was the list of employees who were offered jobs with Prime. Plaintiff contends that Gordon's declaration lacks foundation because it does not explain how she is certain of the number of employees now, but was not so certain at her deposition. In response to plaintiff's objections to the Gordon declaration, Prime submitted the Speer declaration with its reply brief. Speer testified to the same numbers as Gordon. She also affirmed that she is "aware of these facts based on [her]

7

involvement in the process of facilitating the offers of employment and [her] role as head of the Human Resources department." Speer Decl. ¶ 4. She also testified that she was uncertain whether the list presented to her by plaintiff at her deposition was the final list of 609 employees, but nonetheless is able to recall that approximately 609 employees of the approximately 768 employees were offered positions with Prime. Id. at ¶ 5.

Plaintiff has presented no evidence that the number of employees who were not offered positions with Prime exceeded 33% of the workforce. Through discovery, plaintiff could have discovered evidence through interrogatories, requests for production, and Fed. R. Civ. P. 30(b)(6) depositions that is contrary to the testimony of defendants' fact witnesses, yet has failed to do so. For these reasons, plaintiff has not met its evidentiary burden to demonstrate that 33% of the hospital workforce was terminated.

### 2. Whether All Hospital Employees Suffered an Employment Loss Under the Act

Plaintiffs also argue that all hospital employees, including those who were offered positions with Prime, suffered an employment loss. As discussed above, SRMC LLC employed approximately 768 employees of which approximately 609 received job offers from Prime. Plaintiffs argue that the 609 employees received job offers "with dramatically inferior terms and conditions of employment. Prime's offers included wage reductions

8

for some employees, health and fringe benefit reductions, loss of seniority, loss of Union representation, and loss of vacation."[2] Pl's Mem. P. & A. Opp'n Defs. Prime Mot. Summ. J.("Pl's Opp'n Prime Mot.") 14. Accordingly, plaintiff argues that defendants' failure to notify the hospital employees prior to their termination and, for some, new offers of employment violated the federal WARN Act.

While the offers described by plaintiff constitute a loss in employment as that term may be commonly understood, the offers do not constitute an employment loss under the federal WARN Act. The Act defines an employment loss as "(A) an employment termination, other than a discharge for cause, voluntary departure, or retirement, [¶] (B) a layoff exceeding 6 months, or [¶] (C) a reduction in hours of work of more than 50 percent during each month of any 6-month period. 29 U.S.C. § 2101(a)(6). The Ninth Circuit has adopted the Department of Labor's ("DOL") definition of termination. Chauffeurs Union Local 572 v. Westlock Corp., 66 F.3d 241, 243 (9th Cir. 1995) (citing Int'l Alliance of Theatrical & Stage Emps. v. Compact Video Servs., Inc. ("Compact Video"), 50 F.3d 1464, 1466 (9th Cir. 1995). The DOL defines termination "to have [its] common sense meaning[ as] the permanent cessation of the employment relationship . . . ." 54

---

[2] Defendants argue that plaintiff has not provided evidence for these "losses" incurred in the job offers from Prime aside from the loss of union membership. The court does not address this argument because even if plaintiff has demonstrated these losses they are not actionable under the federal WARN Act.

9

Fed. Rev. 16,047 (1989). Further, the Circuit reasoned, "[t]hat Congress applied WARN notice requirements to reductions in work hours, in (C), persuades us that WARN does not apply to any other modifications of the terms of employment." Compact Video, 50 F.3d at 1469. The court continued to advise employees to "look to other sources of law, for example federal labor laws, ERISA, or common law contract principles,to remedy an improper modification of the terms of their employment." Id.[3]

Other Circuits have addressed the issue of whether an employment loss occurs in the event of a sale, where prior to the sale all employees are terminated by the selling employer and then given offers of employment by the purchasing employer. The Sixth and Third Circuits have held that, "An employee cannot be defined as 'terminated' if he or she is, in fact, rehired in the same position." Wiltz v. M/G Transport Services, Inc., 128 F.3d 957, 965 (6th Cir. 1997) (quoting Moore v. Warehouse Club, Inc.,

---

[3] Plaintiff attempts to distinguish Compact Video because it "turns on construing 'a 'sales exception' to WARN," and therefore is not applicable here. Pl's Opp'n Prime Mot. 14. While part of Compact Video does construe the sales exception, the section cited here plainly concerns interpretation of the meaning of employment loss under the statute. The Ninth Circuit confirmed this interpretation in Chauffeurs, 66 F.3d at 243, which concerned a WARN action against a secured creditor of an employer. The court cited to Compact Video in support of the proposition that it had "previously accepted the Department of Labor's (DOL) explanation that the word 'termination' is 'to have its common sense meaning' as 'the permanent cessation of the employment relationship.'" Accordingly, this court must reject plaintiff's efforts to distinguish Compact Video. To be frank, the court is not persuaded by Compact Video or Chauffeurs. The common sense understandings is that the employees lost their job with SRMC LLC and obtained a new job with Prime. Whether I am persuaded or not, however, I am bound.

10

1  992 F.2d 27, 30 (3d Cir. 1993)); see also Headrick v. Rockwell
2  Intern. Corp., 24 F.3d 1272, 1280-81 (10th Cir. 1994) (holding
3  that termination by a selling company followed by hiring a
4  millisecond later by a purchasing company does not constitute
5  termination under the federal WARN Act and suggesting that this
6  would be the case even if the statute did not have a sales
7  exception); Int'l Oil, Local 7-517 v. Uno, 170 F.3d 779 (7th Cir.
8  1999).
9      In Moore, however, the court did not consider a sale.
10 Rather, a business closed one location and made offers of
11 employment to its employees to work at different locations.
12 Moore, 992 F.2d at 28. Likewise, in Rifkin v. McDonnell Douglas
13 Corp., the Eighth Circuit applied the same test for employment
14 loss where a lay off was not permanent, and held that the
15 employees who were laid off were not terminated as understood in
16 the statute. 78 F.3d 1277, 1282 (8th Cir. 1996). Specifically, it
17 reasoned that the rehired employees did not suffer an employment
18 loss. Id. The court has not found any appellate cases that
19 considered a technical termination immediately followed by an
20 offer of employment to qualify as an employment loss under the
21 Act.
22     Here, plaintiff has not presented any evidence that all
23 employees of the hospital suffered an employment loss when they
24 were terminated by SRMC LLC and most were offered employment with
25 Prime. Because plaintiff also has failed to demonstrate that 33%
26 of employees were terminated, as defined by the statute, the

court grants both motions for summary judgment on plaintiff's federal WARN claim.

**B.   Supplemental Jurisdiction**

The court has entered judgment for defendants as to plaintiff's only federal claim. Although the court may retain supplemental jurisdiction over plaintiff's state law claim, the court declines to do so in this case. See 28 U.S.C. § 1367(c); Arbaugh v. Y & H Corp., 546 U.S. 500 (2006).

**C.   Motions to Seal**

Plaintiff and the MPT defendants filed four motions to seal along with their summary judgment filings. The court tentatively granted these motions, but has not yet decided whether the documents at issue should be permanently sealed. There is a strong presumption in favor of public access to documents filed in connection with dispositive motions such as a motion for summary judgment, and this presumption weighs against sealing such documents. Kamakana v. City & County of Honolulu, 447 F.3d 1172, 1178 (9th Cir. 2006). In the context of a dispositive motion, "the district court must base its decision [to seal materials] on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture." Foltz v. State Farm Mut. Auto. Ins. Co., 331 F.3d 1122, 1135 (9th Cir. 2003).

On May 18, 2010, the magistrate judge adopted a stipulation regarding the use of private and confidential information ("Protective Order"). The stipulation granted a party the ability

12

to "designate as 'Confidential' all or portions of any documents, material things, testimony, or other information that contains 'Confidential Information.'" Protective Order ¶ 3. The order defines "Confidential Information" as,

> documents or other information constituting trade secrets under FRCP 26 (c) (1) (G), proprietary or other confidential commercial information that belongs to a Stipulating Party and which if disclosed could place the Stipulating Party at a competitive disadvantage in the marketplace or cause disclosure of information protected by the right to privacy, including the following specific categories of documents: (1) documents that reveal confidential employee information such as name, address, telephone number, or other personal information; (2) documents that reveal financial or other commercial terms of private agreements not available to the public; (3) and documents that reveal confidential financial or commercial information regarding a Stipulating Party's business that is not available to the public or a Stipulating Party's competitors, and which if disclosed could place a Stipulating Party at a competitive disadvantage in the marketplace or cause disclosure of information protected by the right to privacy.

Protective Order ¶ 4.

With respect to its original motion, the MPT defendants seek to seal three lines of their memorandum of points and authorities in support of their motion, two lines of a declaration filed in support of the motion, and MPT's leases with SRMC LLC and Prime. The court has reviewed this narrowly drawn sealing request, and finds sealing to be appropriate because this information contains commercially sensitive information regarding MPT's leases.

In the papers the MPT defendants filed in reply to plaintiff's opposition, they seek to seal seventeen of their responses to plaintiff's separate statement of undisputed facts

and a paragraph of a declaration. These objections are also narrowly drawn to prevent making public information about MPT's leases. Thus, these documents are also properly sealed. The court instructs MPT below on how to file these documents.

Plaintiff, however, seeks to seal numerous documents and sections of their opposition briefs. It states that it seeks to seal these documents and sections of their briefs because the information cited or discussed was marked as confidential by MPT. Because the court has a duty to narrowly construe requests to seal, the court orders MPT to review the documents and sections of briefs that plaintiff has moved to seal. MPT will then notify the court as to what information it wants the court to seal. Along with this notification, MPT will explain why this information should be sealed. Upon receipt of MPT's notice, the court will issue an order on plaintiff's motions to seal.[4]

## IV. CONCLUSION

For the foregoing reasons,

(1) Defendants MPT's and Prime's motions for summary judgment, ECF Nos. 35, 44, are GRANTED as to plaintiff's federal WARN Act claim.

(2) The court DECLINES to exercise supplemental jurisdiction over plaintiff's state law claim and,

---

[4] The court notes that judgment shall be entered with the issuance of this order. Even though the court will be issuing an additional order on sealing, the deadline for parties' to appeal this decision will be triggered by the entrance of judgment, and not this court's final sealing order.

14

```
 1              thus, dismisses, without prejudice, plaintiff's
 2              California WARN Act claim.
 3        (3)   Within seven (7) days of the issuance of this order,
 4              the MPT defendants shall re-file their tentatively
 5              sealed documents in the following manner: Mail two
 6              compact discs ("CDs") to the Clerk of Court. The first
 7              CD should be labeled "Sealed Filings," and include
 8              complete PDF versions of all sealed documents. The
 9              second CD should be labeled "Redacted Filings," and
10              include redacted PDF versions of all sealed documents.
11              The redacted PDF versions should not include documents
12              that are being sealed in their entirety, including the
13              leases. With each CD, the parties shall enclose a
14              letter listing all the documents on each CD. This list
15              shall include a short title for the document, the file
16              name for the document, as saved on the CD, and the date
17              upon which the document was initially filed. The CDs
18              and the letters shall also include the case number and
19              party name. Please direct any questions concerning the
20              filing of the sealed documents to Ana Rivas, Courtroom
21              Deputy, at (916) 930-4133.
22        (4)   Also within seven (7) days of the issuance of this
23              order, the MPT defendants shall file a notice to the
24              court of the documents filed by plaintiff that the MPT
25              defendants want to be sealed. This notice shall
26              indicate the reasons for sealing. The court cautions
```

1       MPT to request sealing as narrowly as possible.
2 (5)  The Clerk of Court is instructed to enter judgment in
3       this case.
4 IT IS SO ORDERED.
5 DATED:  July 16, 2010.

                              LAWRENCE K. KARLTON
                              SENIOR JUDGE
                              UNITED STATES DISTRICT COURT

16